Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

---------------------------------------

SCOTT ALLEN TOMEI,

        Plaintiff,

        v.

PARKWEST MEDICAL CENTER and
COVENANT HEALTH,

        Defendants.

-----------------------------------------------------

**CASE No. 3:19-cv-00041**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES…………………………………………………………...ii

INTRODUCTION…………………………………………………………………...1

ARGUMENT………………………………………………………………………...1

    I.       Summary Judgment Standard

    II.      Plaintiff Has Standing To Seek Injunctive Relief………………………………2

          A.     It is Not Ripe to Decide on the Injunctive Relief at This Stage Because No Party Has Succeeded on the Merits………………………………………2

          B.     Plaintiff Has Standing to Seek Injunctive Relief

          C.     Defendants' Policies and Training Methods Do Not Negate the Likelihood That Plaintiff Will Face Discrimination in the Future……………………9

    III.     There is Ample Evidence That Defendants Acted with Deliberate Indifference, Thus Summary Judgment Must Be Precluded…………………………………...11

          A.     Defendants Were on Notice of Plaintiff's Inability to Communicate…...12

          B.     Defendants' Conduct Constitutes as Failure to Act……………………...13

    IV.     Denial of A Request Without Investigation Creates Evidence of Deliberate Indifference …………………………………………………………………...18

    V.      Summary Judgment Regarding Plaintiff's Declaratory Relief is Inappropriate…20

    VI.     Summary Judgment Excusing Covenant Health from Liability is Inappropriate..20

CONCLUSION…………………………………………………………………………..22

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aikins v. St. Helena Hosp.*,
  843 F. Supp. 1329 (N.D. Cal. 1994)........................................................................7
*Aikins v. St. Helena Hospital*,
  10 A.D.D. 544 ...........................................................................................................8
*Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese*,
  633 F.3d 424 (6th Cir. 2011) ............................................................................3, 7, 8
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................................... 2, 20
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. (1986) .....................................................................................................11
*B.C. v. Mount Vernon Sch. Dist.*,
  837 F.3d 152 (2d Cir. 2016) .....................................................................................3
*Baker v. Meko*, No. 08-CV-119-HRW,
  2008 U.S. Dist. LEXIS 92251, at *22 (E.D. Ky. Nov. 12, 2008)............................2
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................. 1, 21, 22
*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ...................................................................................................3
*Crane v. Lifemark Hosps., Inc.*,
  898 F.3d 1130 (11th Cir. 2018).............................................................................11
*Doe v. BlueCross BlueShield of Tenn., Inc.*,
  926 F.3d 235 (6th Cir. 2019) .................................................................................21
*Duvall v. County of Kitsap*,
  260 F.3d 1124 (9th Cir. 2001)........................................................... 12, 17, 18, 19
*Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*,
  970 F.2d 199 (6th Cir. 1992) .................................................................................22
*Gaylor v. Hamilton Crossing CMBS*,
  582 F. App'x 576 (6th Cir. 2014) ............................................................................3
*Gilead Scis., Inc.*,
  102 F. Supp. 3d 688 (E.D. Penn. 2015)................................................................11
*Gillespie v. Dimensions Health Corp.*,
  369 F. Supp. 2d 636 (D. Md. 2005) ........................................................................7
*Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*,
  No. 15-CV-2572 (PKC) (PK), 2018 U.S. Dist. LEXIS 61586 (E.D.N.Y. Apr. 11, 2018)...10, 11
*Houston v. Marod Supermarkets, Inc.*,
  733 F.3d 1323 (11th Cir. 2013).................................................................................3
*Kreisler v. Second Ave. Diner Corp.*,
  731 F.3d 184 (2d Cir. 2013)......................................................................................3
*League of Women Voters of Ohio v. Brunner*,
  548 F.3d 463 (6th Cir. 2008) ............................................................................9, 11
*Leary v. Daeschner*,

349 F .3d 888 (6th Cir. 2003) ..................................................................................1

*Loeffler v. Staten Island Univ. Hosp.*,
 582 F.3d 268 (2d. Cir. 2009) ................................................. 11, 12, 14, 19

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ...............................................................................3, 7

*Macigewski v. Backus*,
 1998 U.S. App. LEXIS 15395 (6th Cir. 1998) ...........................................14

*Majocha v. Turner*,
 166 F.Supp.2d 316 (W.D. Pa. 2001) ..........................................................8

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) ...................................................................................11

*McBride v. Mich. Dep't of Corr.*,
 294 F. Supp. 3d 695 (E.D. Mich. 2018) ....................................................15

*McCullum v. Orlando Regional Healthcare System, Inc.*,
 768 F.3d 1135 (11th Cir. 2014) ..................................................................13

*Mosley v. Kohl's Dep't Stores, Inc.*,
 942 F.3d 752 (6th Cir. 2019) ............................................................Passim

*Nat'l Ass'n of Deaf v. State*,
 318 F. Supp. 3d 1338 (S.D. Fla. 2018) ......................................................19

*Neff v. American Dairy Queen Corp.*,
 58 F.3d 1063 (5th Cir. 1995) ................................................................20, 21

*Pierce v. District of Columbia*,
 128 F. Supp. 3d 250 (D.D.C. 2015) ...........................................................10

*Prakel v. Indiana*,
 100 F. Supp. 3d 661 (S.D. Ind. 2015).........................................................19

*R.K. v. Bd. of Educ.*,
 637 Fed. Appx. 922 (6th Cir. 2016) ...........................................................12

*Rogers v. Colo. Dep't of Corr.*,
 No. 16-cv-02733-STV, 2019 U.S. Dist. LEXIS 159001 (D. Colo. Sep. 18, 2019) .................15

*Rosa v. 600 Broadway Partners, LLC*,
 175 F. Supp. 3d 191 (S.D.N.Y. 2016) ..........................................................9

*Shaywitz v. Am. Bd. of Psych. & Neurology*,
 675 F.Supp.2d 376 (S.D.N.Y. 2009) ............................................................7

*Silva v. Baptist Health S. Fla., Inc.*,
 856 F.3d 824 (11th Cir. 2017).....................................................................22

*Smith v. United States*,
 508 U.S. 223 (1993) ...................................................................................20

*United States v. Days Inns of Am.*,
 22 F. Supp. 2d 612 (E.D. Ky. 1998).............................................................21

*Updike v. Multnomah County*,
 870 F.3d 939 (9th Cir. 2017) ......................................................................19

*Wright*,
 831 F.3d (2d Cir. 2016) ................................................................................4

Statutes

42 U.S.C. § 12182(a) ..........................................................................................20
42 U.S.C. § 18116(a) ......................................................................................3, 11
Tenn. Code Ann. § 48-56-205 .........................................................................22

Rules

Fed. R. Civ. P. 56.................................................................................................1

Regulations

28 C.F.R. § 35.160..............................................................................................18
28 C.F.R. § 35.164..............................................................................................18
28 C.F.R. § 36.104..............................................................................................14
28 C.F.R. § 36.303(f)..........................................................................................14
45 CFR § 92.201(e)(2).........................................................................................10
45 CFR § 92.202(a)...............................................................................................3

## INTRODUCTION

Plaintiff Scott Allen Tomei brought this action for disability discrimination seeking injunctive relief and money damages. Plaintiff alleges that Defendants Parkwest Medical Center ("Parkwest") and Covenant Health have subjected him to unlawful discrimination in violation of Section 1557 of the Patient Protection and Affordable Care Act.

Plaintiff submits this Memorandum in opposition to the Motion for Summary Judgment filed by Defendants. ECF No. 30. The Court must deny Defendants' motion because, as fully elaborated in the following sections, there are genuine disputes of material facts surrounding Defendants' liability and the relief sought by Plaintiff: (1) Plaintiff has established standing to seek injunctive relief because he has demonstrated a future injury; (2) there is ample evidence that Defendants acted with deliberate indifference to Plaintiff throughout his medical care at Parkwest; (3) summary judgment is inappropriate for Plaintiff's declaratory relief; and (4) Covenant Health is also liable because it maintains sufficient control over the operation of Parkwest. Therefore, Plaintiff asks this Court to deny Defendants' Motion for Summary Judgment in its entirety.

## ARGUMENT

### I. Summary Judgment Standard

Summary judgment is appropriate only when pleadings, depositions, and other documents in the record show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56. The moving party has the burden of demonstrating that no genuine issue of material fact exists and the court must view the record in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F .3d 888,897 (6th Cir. 2003). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could return a verdict for the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

1

242, 247–48 (1986). Furthermore, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. at 255. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

## II. Plaintiff Has Standing To Seek Injunctive Relief

### A. It is Not Ripe to Decide on the Injunctive Relief at This Stage Because No Party Has Succeeded on the Merits

Defendants argue that they are entitled to summary judgement regarding Plaintiff's injunctive relief because Plaintiff's claim is time-barred by state statute of limitations, as alleged in their Motion to Dismiss. Defs.' Mem. Supp. Summ. J. 7, ECF No. 31.

However, this argument lacks any merit because the Court has yet to decide whether Plaintiff's claim is time-barred. Plaintiff already opposed Defendants' Motion to Dismiss. ECF No. 34. If the Court denies the Motion to Dismiss, the case will proceed, and Plaintiff may succeed on the merits. Thus, it is not ripe to adjudicate the injunctive-relief issue because "the instant proceeding is in the early stages. No party has prevailed or 'succeeded' on the merits." *Baker v. Meko*, No. 08-CV-119-HRW, 2008 U.S. Dist. LEXIS 92251, at *22 (E.D. Ky. Nov. 12, 2008). As such, the Court must deny Defendants' request for summary judgment on injunctive relief.

### B. Plaintiff Has Standing to Seek Injunctive Relief

Contrary to Defendants' allegations, Plaintiff has standing to seek injunctive relief. To satisfy Article III standing, plaintiffs must show that (1) they suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant'"; and (3) it is likely "that the injury will be redressed by a favorable decision." *Mosley v. Kohl's Dep't Stores, Inc.,* 942 F.3d 752, 756 (6th Cir. 2019) (quoting *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th

Cir. 2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The injury inquiry is twofold where a plaintiff requests injunctive relief, as it requires the plaintiff to show both "past injury and a real and immediate threat of future injury." *Mosley*, 942 F.3d at 756 (citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013); *Gaylor*, 582 F. App'x at 579 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983))). To support standing at the summary judgment stage, a plaintiff must only "set forth by affidavit or other evidence specific facts which for the purposes of summary judgment motion will be taken as true.'" *Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 430 n.2 (6th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561). Defendants argue that Plaintiff has not shown the real or immediate threat of future injury. Defs.' Mem. Supp. Summ. J. 8–12, ECF No. 31.

In the Sixth Circuit, a plaintiff can demonstrate a future injury for an ADA claim[1] against a public accommodation if he establishes "(1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." *Id.* (citing *Gaylor*, 582 F. App'x at 580 (collecting cases)); *see also Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013) ("[D]eterrence constitutes an injury under the ADA"); *Wright*, 831 F.3d at 73 (2d Cir. 2016) ("An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from

---

[1] The standing requirements for the ADA claims apply to this ACA claim. The ACA's regulations directly adopt the ADA Title II's standards—which has even stronger protections than the ADA Title III standards—to "ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities . . . ." 45 CFR § 92.202(a). Also, Section 1557 of the ACA incorporates Section 504 of the Rehabilitation Act, 42 U.S.C. § 18116(a), which applies the standards of the ADA. *See B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). Hence, the standing requirements for the ADA injunctive relief claims apply to the ACA disability claims, such as here. Defendants also agree. *See* Defs.' Mem. Supp. Summ. J. 8–12, ECF No. 31 ("In assessing permanent injunctive relief stemming from a cause of action brought through the ADA and/or § 504 . . . ."); Defs.' Mem. Supp. Summ. J. 9-11, ECF No. 31 (relying on the ADA and Rehabilitation Act cases for their standing argument).

3

attempting to access the services otherwise available to him.") (citations omitted). Most importantly, the Sixth Circuit recently held that plaintiffs seeking injunctive relief in an ADA claim may establish a future injury—namely, an intent to return—by (1) more than a "some day" intent to return to the geographic area and (2) an interest in the accommodation. *Mosley*, 942 F.3d at 759.

In *Mosley*, the Sixth Circuit directly addressed the issue of standing for injunctive relief in ADA claims and clarified its standard. In *Mosley*, the disabled plaintiff—an Arizona resident— sued the defendant public accommodation in Michigan after one visit, to make the accommodation accessible and ADA-compliant. *Id.* at 755–56. The Court found the plaintiff's intent to return to the accommodation—and thus, satisfying the "future injury" standing requirement—because of his regular travel to the Detroit area, his concrete plans to visit again to see family and perform, and his interest in visiting Defendants' stores. *Id.* at 761. In doing so, the Court made several important findings.

First, even plaintiffs who do not live near the accommodation can prove an intent to return "[o]nce a plaintiff has established more than a 'some day' intent to return to the geographic area and an interest in the accommodation . . . ." *Id.* at 759. Logically, plaintiffs who live near the accommodation satisfy the intent to return to the geographic area factor. It follows, then, that for plaintiffs who live near the accommodation, the only requirement is to establish an interest in visiting the accommodation. Second, plaintiff do not have to provide a definitive plan for returning to the accommodation because it "would frustrate the ADA's aim to 'integrate [individuals with disabilities] into the economic and social mainstream of American life.'" *Id.* (quotation omitted) (alteration in original). Third, plaintiffs do not have to visit the accommodation more than once because it "would flout Title III's requirement that plaintiffs not be asked 'to engage in a futile gesture' once they have actual notice of the barriers to access." *Id.* at 760 (citations omitted).

Here, Plaintiff has standing for injunctive relief because he clearly established his intent to return to Parkwest. First, Plaintiff demonstrated more than a "some day" intent to return to the geographic area because he lives in the geographic area. According to Google Maps, Plaintiff's residence is approximately 17 miles from Parkwest. Pl.'s Aff. ¶ 4, Ex. A. The court in *Mosley* found that "[a] distance of close to 15 miles does not raise an inference of implausibility." *Id.* at 760 n. 5 (citing cases that found plausible intent to return for distances of 12, 20, and 30 miles). Thus, Plaintiff met the first factor of the Sixth Circuit's standard.

Second, Plaintiff has clearly established his interest to return to Parkwest in the future. Plaintiff's complaint asserted that "Plaintiff still wishes to access Defendants' services and receive care in Defendants' facilities as it is the closest hospital to his home, but is being prevented from doing so by Defendants' discrimination against his on the basis of his disability." Compl. ¶ 56, ECF No. 1. What is more, Plaintiff submits an affidavit (Exhibit A) attached to this Memorandum that establishes his plan to return to Parkwest in the future:

8. I did not return to Parkwest since the events at issue because I was deterred from doing so based on Parkwest's failure to provide effective communication and the discrimination I experienced there, as explained in my Complaint.

9. I have a definite plan to return to Parkwest in the future but am currently deterred from doing so because of Parkwest's failure to provide effective communication and the discrimination I experienced there, as explained in my Complaint.

5

10. I would like to visit Parkwest to avail myself of the services and care available at Parkwest.

11. I would also like to visit Parkwest to assure that it is in compliance with the ACA, so that myself and other deaf and hard of hearing individuals, or their companions, will have full and equal enjoyment of Parkwest's facilities, services, or programs without fear of discrimination.

12. I stated during my deposition that I prefer other hospitals to Parkwest because of Parkwest's failure to provide effective communication and the discrimination I experienced there, as explained in my Complaint.

13. If I have a need for a large hospital in the future, I would like to visit Parkwest if it provides effective communication according to the laws and if does not discriminate against me.

Pl.'s Aff. ¶¶ 8-13, Ex. A. Here, Plaintiff stated that he plans to return to Parkwest in the future. Plaintiff also explained that it was Parkwest's failure to provide effective communication and discrimination against Plaintiff that deterred him from returning to Parkwest. Thus, Plaintiff has clearly established his intent to return to Parkwest in the future once it becomes ACA-compliant. *Mosley*, 942 F.3d at 759 ("It is enough to allege an intent to return to the area and an interest in visiting the accommodation in the future when it becomes ADA-compliant."); *DeWeese*, 633 F.3d at 430 n.2 ("[A] plaintiff must only 'set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken as true.'") (quoting *Lujan*, 504 U.S.

at 561). By clearly demonstrating his intent to return to Parkwest, Plaintiff has established his future injury and standing to proceed with his injunctive relief claims.

Defendants argue that Plaintiff must aver facts that "Plaintiff is likely to return to Parkwest in the future and that either (1) all deaf or hard of hearing patients at Parkwest are always denied interpretive services at Parkwest, or (2) Parkwest orders or authorizes its staff to deny deaf or hard of hearing individuals interpretive services." Defs.' Mem. Supp. Summ. J. 10, ECF No. 31. Notably, Defendants primarily relied on a non-binding California district court case from 26 years ago, *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329 (N.D. Cal. 1994) ("*Aikins I*"). *Id.* at 9–10. Defendants' all other cited cases are also non-binding—some unreported—cases from 2001 and past. Defs.' Mem. Supp. Summ. J. 10-11, ECF No. 31. Defendants' arguments are flawed. First, Defendants ignored the controlling Sixth Circuit standards from *Mosley* that clarified the standing requirements for injunctive relief in the ADA claims. Second, Defendants' cases are inapplicable here. Defendants' cases "generally involve plaintiffs who are unlikely to face 'real and immediate' future discrimination" *Shaywitz v. Am. Bd. of Psych. & Neurology*, 675 F.Supp.2d 376, 384–85 (S.D.N.Y. 2009) (commenting on Defendants' cases). Unlike plaintiffs in Defendants' cases that lacked future injury, Plaintiff here has clearly established a real and immediate future injury under the Sixth Circuit's standards, as explained above. *See Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636, 644 n7 (D. Md. 2005) (finding the cases cited by Defendants inapplicable in holding that the deaf plaintiffs have standing for injunctive relief against the defendant hospital); *Majocha v. Turner*, 166 F.Supp.2d 316, 325 (W.D. Pa. 2001) (finding that injunctive relief may be available for health care facilities and finding that "in the follow-up to *Aikins I*, the district court for the Northern District of California permitted the claim for injunctive relief to go forward after Mrs. Aikins amended her complaint . . . to allege that she stayed at her mobile home near the

7

defendant hospital several times a year, considered it reasonably likely that she would seek to use its medical services in the future, and that the hospital engaged in a pattern and practice of denying equal access to the hearing impaired. *Aikins v. St. Helena Hospital*, 10 A.D.D. 544, 5N DLR Plaintiff 129 (N.D. Ca. 1994).").

Defendants also argue that Plaintiff's deposition testimony negates his standing because "he has not returned to Parkwest since the events at issue, has no plans to return to Parkwest, and prefers other hospitals." Defs.' Mem. Supp. Summ. J. 13, ECF No. 31. Defendants' arguments are meritless. First, as the Sixth Circuit found, *Mosley*, 942 F.3d at 760, Plaintiff does not have to return to Parkwest to have standing for injunctive relief. Second, as explained above, Plaintiff has established his plan to return to Parkwest with his affidavit. *See* Pl.'s Aff. ¶¶ 8–13; *DeWeese*, 633 F.3d at 430 n.2. In fact, Plaintiff had visited Parkwest on numerous occasions before the events at issue, Pl.'s Aff. ¶¶ 7, 12, and was deterred from returning to Parkwest because of its failure to provide effective communication and discrimination against Plaintiff. *See* Pl.'s Aff. ¶¶ 8–9, 12. Third, Plaintiff's preference of other hospitals was caused by Defendants, namely its discrimination against Plaintiff. In fact, Plaintiff has stated his preference for Parkwest to other hospitals before the events at issue took place. *See* Pl.'s Statement of Disputed Facts ¶ 12. Plaintiff also used to visit Parkwest regularly before the events at issue. *See* Pl.'s Aff. ¶¶ 7, 12. Moreover, Plaintiff explained in his affidavit why he stated he prefers other hospitals over Parkwest: because of Parkwest's failure to provide effective communication and discrimination against him. Pl.'s Aff. ¶ 12. Plaintiff's affidavit does not contradict his deposition statements because it explains why Plaintiff stated as such: that Parkwest's failure to provide effective communication and discrimination against him deterred him from returning to Parkwest.

### C. Defendants' Policies and Training Methods Do Not Negate the Likelihood That Plaintiff Will Face Discrimination in the Future

Defendants also argue that "Plaintiff's request for injunctive relief is moot as Defendants already provide the policies and training for which Plaintiff prays in his Complaint." Defs.' Mem. Supp. Summ. J. 15, ECF No. 31. However, Defendants' attempt to moot Plaintiff's injunctive relief fails. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) (quotations omitted). A defendant's "voluntary cessation of a challenged practice" does not moot a case. *Id.* (citations omitted). "Rather, voluntary conduct moots a case only in the rare instance where 'subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quotation omitted) (emphasis added). Moreover, the party asserting mootness bears the "'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (quotations omitted).

Here, Defendants have not met their "heavy burden of persuading" that Plaintiff will not face discrimination in the future. First, the mere fact that Defendants have policies in place to provide communication access does not render Plaintiff's claim moot. Policies, by their very nature, are capable of being changed at any time. *See Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198–99 (S.D.N.Y. 2016) ("If we conclude that [plaintiff's] claims are moot, then should [defendant] determine that future litigation is unlikely, it may well calculate that its new policy is no longer the preferable course of action and revert to the old policy it prefers and apparently believes to be legal."); *Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*, No. 15-CV- 2572 (PKC) (PK), 2018 U.S. Dist. LEXIS 61586, at *5–6 (E.D.N.Y. Apr. 11, 2018) (rejecting the Defendant's argument that the case is moot because "the mere existence of a contract [with a sign language

9

interpreting agency] is insufficient to show that [defendant] has completely and irrevocably eradicated practices alleged by Plaintiff" since the defendant may choose to end its contract at any time and "resurrect[] the set of circumstances that prompted the litigation") (internal citations omitted). Second, the record shows that Defendants' actual policies still fall short of what the law requires. For instance, the policies allow the use of non-professional interpreters, such as family or friends. *See* Pl.'s Statement of Disputed Facts ¶ 14. However, the ACA regulations prohibit family or friends from interpreting except for limited situations. *See* 45 CFR § 92.201(e)(2). Also, the policies do not mandatorily require a communication assessment for deaf and hard of hearing individuals. *See* Pl.'s Statement of Disputed Facts ¶ 15. However, because the ACA adopts the standards of Title II of the ADA, Defendants have an affirmative duty to assess Plaintiff's communication needs. *See Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015) (explaining that the prison, an ADA Title II entity, had an affirmative duty to assess disabled inmates' accommodation needs). Third, Parkwest's actual practices fall short of what the law requires. In particular, Plaintiff suffered from discrimination even though Defendants already had policies and training in communication access for deaf and hard of hearing. Fourth, the record reveals a lack of oversight and training in the implementation of its policies and practices regarding communication access. For instance, Defendants do not train their staff regarding the basics of effective communication with deaf and hard of hearing individuals. *See* Pl.'s Statement of Disputed Facts ¶ 16. Fifth, even assuming that the situation at Parkwest somehow improved after the events at issue, Defendants' "voluntary cessation of a challenged practice" does not moot the case. *Brunner*, 548 F.3d at 473. Regardless, it is not "absolutely clear" at this point that Parkwest's wrongful behavior will not recur, especially because Plaintiff suffered from discrimination even while Defendants had policies and trainings in place. As such, Defendants have not met their heavy

10

burden of persuasion, and thus, this Court should deny Defendants' summary judgment motion relating to injunctive relief.

### III. There is Ample Evidence That Defendants Acted with Deliberate Indifference, Thus Summary Judgment Must Be Precluded

Defendants contend that there is no evidence of deliberate indifference. Deliberate indifference, as courts have explained, "will often be a fact-laden question." *See, e.g.*, *Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*, No. 15-CV-2572 (PKC) (PK), 2018 U.S. Dist. LEXIS 61586, at *8 (E.D.N.Y. Apr. 11, 2018). Evidence on summary judgment must be construed in favor of Plaintiffs. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 424, 255 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1136 (11th Cir. 2018). When viewing the Defendants' actions under this standard, a reasonable jury would determine that Defendants' conduct violated Plaintiff's substantive rights; thus, summary judgment must be precluded.

Under the Rehabilitation Act, a plaintiff may obtain damages upon a showing that the defendant acted with at least deliberate indifference to their rights.[2] *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275–76 (2d. Cir. 2009). The test for deliberate indifference has two elements: 1) knowledge that harm to a federally protected right is substantially likely to occur and 2) a failure to act upon that likelihood. *Duvall v. County of Kitsap*, 260 F.3d 1124,1138–1140 (9th Cir. 2001) (denying summary judgment when defendants "had notice of [a patient's] need for the accommodation involved and that they failed despite repeated requests to take the necessary

---

[2] Plaintiff's claims stem from Section 1557 of the Affordable Care Act. As stated in Plaintiff's Opposition to Defendant's Motion to Dismiss, the ACA creates a private right of action and borrows the enforcement mechanisms from the Rehabilitation Act of 504. 42 U.S.C. § 18116(a); *see also Septa v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698 (E.D. Penn. 2015). Thus, this Court must look to the Rehabilitation Act for remedies available for ACA claims.

action"). This test was adopted by the Sixth Circuit in *R.K. v. Bd. of Educ.*, 637 Fed. Appx. 922, 925 (6th Cir. 2016) (finding that plaintiff's claims failed to satisfy the first prong of the *Duvall* test). As detailed below, there is ample evidence to show Defendants acted with deliberate indifference.

### A. Defendants Were on Notice of Plaintiff's Inability to Communicate

The first prong of the test is satisfied when a plaintiff has alerted the entity to his need for accommodation. *Duvall*, 260 F.3d at 1139. *See, e.g., id.* at 1040 (hearing-impaired litigant informed county-court staff of his need for "videotext display" for court hearings and of the inadequacy of preexisting accommodations for the hearing impaired); *Loeffler*, 582 F.3d at 276–77 (observing that a hospital had appropriate level of knowledge of patient's need for an ASL interpreter where the patient and family members alleged making "attempts to secure an interpreter prior to surgery" and afterward). Accordingly, it is enough that a plaintiff has given the entity the information necessary to understand the need for and reasonableness of the requested accommodation.

Plaintiff gave Defendants such information. It is undisputed that Plaintiff is deaf and his primary form of communication is ASL. *See* Pl.'s Affidavit ¶¶ 2, 3. During Plaintiff's stay at Defendants' hospital, Defendants knew that Plaintiff requested an interpreter, as evidenced by Defendants' Communication Assessment and Right to Interpreter for Hearing Impaired form. *See* Exhibit B, Pl.'s Statement of Disputed Facts ¶ 2. On this form, Plaintiff requested the use of an on-site qualified interpreter. *Id.* Furthermore, Plaintiff testified that he repeatedly requested a live ASL interpreter. Pl.'s Statement of Disputed Facts ¶ 3. Plaintiff's daughter, Tala Tomei, also testified that she repeatedly requested a live ASL interpreter. Pl.'s Statement of Disputed Facts ¶ 4. Plaintiff's ex-wife, Leigha Tomei, also testified that she repeatedly requested a live ASL

interpreter. Pl.'s Statement of Disputed Facts ¶ 5. Based on Defendants' own records[3] and the repeated requests for a live interpreter, Defendants had knowledge of Plaintiff's need for a live interpreter.

Defendants mistakenly urge this court to follow *McCullum v. Orlando Regional Healthcare System, Inc.*, Sys., Inc. 768 F.3d 1135 (11th Cir. 2014), which is clearly distinguishable from this case. In *McCullum*, the Eleventh Circuit affirmed the district court's conclusion that plaintiffs could not prevail on a claim for compensatory damages against hospital staff, noting that neither the patient nor the patient's family members **had ever requested interpretation services**. 768 F.3d at 1148–49 (emphasis added). In contrast, here, Plaintiff and his family members made numerous requests made for a live interpreter. *See* Pl.'s Statement of Disputed Facts ¶¶ 3–5. The evidence clearly shows that Defendants were put on notice.

### B. Defendants' Conduct Constitutes as Failure to Act

Defendants also dispute the second element of the test: whether the entity's conduct constitutes a failure to act. *See* Def.'s Mem. Supp. Summ. J. at 19, ECF No. 31. Defendants rest on the fact that they offered some auxiliary aids to Plaintiff. *Id.* However, the evidence shows that the provided aids fostered ineffective communication, thus resulting in a failure to act.

First, Defendants offered a malfunctioning video remote interpreting ("VRI")[4] system on several occasions. Plaintiff and his family members all testified that the provided VRIs

---

[3] In addition to Defendants' Communication Assessment Form, Marie Wilson, a nurse who was responsible for part of Plaintiff's medical care, typed in her notes that plaintiff is **unable to communicate as he is deaf**. *See* Pl.'s Statement of Disputed Facts ¶ 2.

[4] A VRI system is essentially a live web cam—that is, "an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images." 28 C.F.R. § 36.104.

13

continuously froze.[5] *See* Pl.'s Statement of Disputed Facts ¶ 7. Specifically, Leigh Tomei stated that the VRI never worked when she was present in the hospital. Rozynski Declaration Ex. F, Leigha Tomei, Dep. p. 40:16-18. A trier of fact could determine that a person whose primary language is ASL is unable to effectively communicate when the on-screen interpreter continues to freeze, as this would cause both the person using the VRI and the on-screen interpreter to miss signs that were communicated.

Additionally, Sharon Monday, regulatory compliance manager at Defendants' facility, testified that obtaining a live interpreter and a VRI is the same process. *See* Pl.'s Statement of Disputed Facts ¶ 8. Deliberate indifference must be a "deliberate choice" rather than negligence or bureaucratic inaction. *Loeffler*, 582 F.3d at 268, 276; *see also Macigewski v. Backus*, 1998 U.S. App. LEXIS 15395, at *6 (6th Cir. 1998). Thus, a trier of fact could determine that Defendants acted with deliberate indifference when they continued to make the deliberate choice to obtain and use the faulty VRI machines instead of obtaining a live interpreter.

Secondly, Defendants' offered Plaintiff a whiteboard for written communication. Under the effective communication provisions of the DOJ's Technical Assistance Manual for Title III,

---

[5] According to 28 C.F.R. § 36.303(f):

**(f)** Video remote interpreting (VRI) services. A public accommodation that chooses to provide qualified interpreters via VRI service shall ensure that it provides—

**(1)** Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;

**(2)** A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position;

**(3)** A clear, audible transmission of voices; and

**(4)** Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI.

the DOJ explains that "[i]n a retail setting, pointing to product information or writing notes back and forth to answer simple questions about a product may allow a person who is deaf to decide whether to purchase the product"; however, where more complex information is communicated, like "[i]n a doctor's office, an interpreter generally will be needed for taking the medical history of a patient who uses sign language or for discussing a serious diagnosis and its treatment options." U.S. Dep't of Justice, Civil Rights Div., Disability Rights Section, ADA Requirements, Effective Communication, https://bit.ly/2PqLHpD (Jan. 31, 2014) (emphasis in the original). Furthermore, the average deaf person cannot "communicate in real time" and is "required to communicate outside of their native language, with major barriers to expressing tone and emotion." *Rogers v. Colo. Dep't of Corr.*, No. 16-cv-02733-STV, 2019 U.S. Dist. LEXIS 159001, at *46–47 (D. Colo. Sep. 18, 2019) (analyzing text telephones or "TTYs"—the functional equivalent of note writing[6]) *see also McBride v. Mich. Dep't of Corr.,* 294 F. Supp. 3d 695, 707 (E.D. Mich. 2018) (reviewing "ample evidence" that for deaf and hard of hearing persons who communicate in ASL, "TTYs are not a practical or effective communication tool"). Accordingly, note writing is an ineffective form of communication to discuss hospital treatment.

Michaela Whidby, a nurse responsible for part of Plaintiff's medical care, testified to the use of the whiteboard at Parkwest. (Michaela Whidby Deposition (12/17/2019) pp .25-26: 9-4)

> LAWYER: Okay. What exactly did you write on the white board, if you remember?
> WHIBDY: I don't remember exactly what I wrote on the white board.
> LAWYER: ·And you don't know what he responded with on the white board?

---

[6] The court in *Rogers* considered text telephones or "TTYs," which are the functional equivalent of note writing. What Is a TTY?, http://www.abouttty.com/ (last visited Feb. 19, 2020) ("A TTY is a special device that lets people who are deaf, hard of hearing, or speech-impaired use the telephone to communicate, by allowing them to type messages back and forth to one another instead of talking and listening.")

15

WHIDBY: No.
LAWYER: Do you know where the white board was located
in the room?
WHIDBY: It would have been on the wall.
LAWYER: So would Mr. Tomei had to get out of his bed to
write back with you?
WHIDBY: Yes.

A trier of fact could determine that it was unreasonable and ineffective for Defendants to expect that Plaintiff, a deaf patient who had been hospitalized for extensive leg pain, who had blood clots present in his leg, who had surgery on his leg, and who ultimately had to have his leg partially amputated would be able to get out of his hospital bed to effectively communicate with hospital staff. *See* Compl. ¶¶ 12–13, 23–24, 41, ECF No. 1. Thus, a trier of fact could determine that Defendants failed to act when they made the deliberate choice to communicate with Plaintiff through a white board.

Finally, Defendants ineffectively attempted to use Plaintiff's family members as interpreters. Tala Tomei testified that despite her being there, there was constant confusion trying to explain to her dad what the doctors were saying and vice versa as well as several instances of miscommunication in which she was not able to effectively interpret what her dad's needs were. *See* Pl.'s Statement of Disputed Facts ¶ 9. She also recalls the experience as being very traumatic as she had to attempt to put her emotions aside and focus on ensuring her father understood what was happening, even though at the time she was very concerned for him. *See* Pl.'s Statement of Disputed Facts ¶ 9. Leigh Tomei testified that she was also unable to communicate effectively with staff due to her own deafness and limitations understanding speech. *See* Pl.'s Statement of Disputed Facts ¶10. Additionally, nurses involved in Plaintiff's treatment, Janelle Bagneski and Marie Wilson, noted that they were aware of the risks present when using family member as interpreters. *See* Pl.'s Statement of Disputed Facts ¶11. A trier of fact could determine that

16

Defendants failed to act when they made the deliberate choice to continue to use family members as interpreters, despite knowing the dangers of doing such, despite the difficulty the family members were having, and despite the repeated requests by family members to obtain a live interpreter.

Furthermore, evidence of *some* action taken by a defendant is not sufficient to refute a plaintiff's claim that the entity failed to act: the action must be effective to meet the disabled person's communication needs. *Duvall*, 260 F.3d at 1139–40 ("[A] public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable."). In *Duvall*, the plaintiff requested a specific auxiliary aid, a videotext display for hearing, and the defendant's employee decided to take the action of rescheduling the hearing to a different courtroom. *Id.* The defendants therefore took *some* action toward accommodating the plaintiff, but not the action requested and not an action that the plaintiff found effective to meet his communication needs. *Id.* The Ninth Circuit found that the defendant was not entitled to summary judgment because the plaintiff provided sufficient evidence to show that the "defendants' decisions not to accommodate him were considered and deliberate." *Id.*

It is undisputed that Defendants' staff knew Plaintiff was deaf and yet failed to offer him a sign language interpreter. *See* Pl.'s Statement of Disputed Facts ¶ 2. The evidence shows that Plaintiff and his family members repeatedly asked for sign language interpreters throughout his stay in the hospital. The evidence also shows that Defendants chose to provide auxiliary aids that were ineffective. These facts are sufficient evidence to obtain damages based on deliberate indifference

## IV. Denial of A Request Without Investigation Creates Evidence of Deliberate Indifference

17

As explained in Plaintiff's Response to Defendant's Motion to dismiss, The ACA adopts Title II standards. Accordingly, under the ACA, Defendants were required to give "primary consideration" to a disabled person's choice of an auxiliary aid and service. 28 C.F.R. § 35.160. The entity must honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden. *Id.* The second option, according to the DOJ's regulations, "must be made by the head of the public entity" and "must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.164. An ACA violation has occurred because, as explained above, the testimony shows that a live interpreter was Plaintiff's first choice and other forms of communication were not effective. Additionally, there was no undue burden was present for Defendants as explained by Sharon Monday, who testified that it is not too financially costly for Parkwest to provide and interpreter and Parkwest would be able to accommodate a request for a live 24-hous ASL interpreter. *See* Pl.'s Statement of Disputed Facts ¶ 12. Furthermore, there is no record that a written statement was ever made by Defendants explaining why they decided to not provide Plaintiff's primary choice of and auxiliary aid.

Although a violation of a substantive right does not on its face prove deliberate indifference, a denial of a request without investigation is sufficient to survive summary judgment on the question of deliberate indifference. *See Updike v. Multnomah County*, 870 F.3d 939, 954 (9th Cir. 2017) (stating that "[a] denial of a request [for an accommodation] without investigation is sufficient to survive summary judgment on the question of deliberate indifference"); *Loeffler*, 582 F.3d at 276 (noting that "it is not clear that the district court construed all the facts in the light most favorable to the Loefflers" where it "did not reference any of the Loefflers' alleged attempts to secure an interpreter prior to surgery, or their numerous attempts to secure one afterward," which

went "unheeded"); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1140 (9th Cir. 2001) (stating that the plaintiff "provided sufficient evidence to create a triable issue of fact as to whether [the defendants] . . . had notice of his need for the accommodation involved and that they failed despite repeated requests to take the necessary action"), *as amended on denial of reh'g* (Oct. 11, 2001); *Nat'l Ass'n of Deaf v. State*, 318 F. Supp. 3d 1338, 1348 (S.D. Fla. 2018) (denying the defendants' motion to dismiss where the plaintiff notified the defendants of the alleged ADA and Section 504 violations, but never received a response, and where the defendants' response to a related Federal Communications Commission complaint "evidences no intent to change their current practices"); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 685–86 (S.D. Ind. 2015) (stating that "[it is the defendant's duty to undertake a fact-specific investigation . . . to determine the proper accommodation required, giving "primary consideration" to the plaintiff's preference' and denying summary judgment where a reasonable jury could conclude that the decisions to deny the requests were made ("without making sufficient effort to determine whether it would have been possible to provide the requested accommodation without fundamental alteration or undue burden, or to consider whether some alternate accommodation could be provided").

Here, Defendants committed a clear violation in accordance with the ACA. Additionally, there is no record to evidence that the Defendants properly investigated Plaintiff's need for the ALS interpreter, despite being asked repeatedly.  In fact, Defendants have not pointed to a single reason why the live interpreter was never provided, nor provided evidence of any efforts that a live interpreter was ever requested despite the various problems with the provided auxiliary aids. Thus, the Defendants were deliberately indifferent to Plaintiff's rights as an individual with a disability by knowingly failing to appropriately accommodate him. Plaintiff's claims should survive summary judgment because a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 249.

19

## V. Summary Judgment Regarding Plaintiff's Declaratory Relief is Inappropriate

Defendants argue that they are entitled to summary judgment regarding Plaintiff's request for declaratory relief because "the statute of limitations expired prior to the filing of this claim," as alleged in their Motion to Dismiss. Defs.' Mem. Supp. Summ. J. 21. However, as explained, *supra* Section II.A, this argument is meritless because the Court has yet to decide whether Plaintiff's claim is time-barred. As such, the Court must deny Defendants' request for summary judgment on declaratory relief.

## VI. Summary Judgment Excusing Covenant Health from Liability is Inappropriate

The ADA imposes liability for discriminatory conduct on "any person who owns, leases, (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Because the ADA does not define the terms owns, leases, or operates, courts have construed these terms by their ordinary meaning. *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) (citing *Smith v. United States*, 508 U.S. 223, 228 (1993). In determining liability for parent companies or franchisors, courts have applied a prevalent test from the Fifth Circuit's decision of *Neff v. American Dairy Queen Corp. See Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 243 (6th Cir. 2019); *United States v. Days Inns of Am.*, 22 F. Supp. 2d 612, 617 (E.D. Ky. 1998). The "relevant inquiry… is whether [a facility] specifically controls the modification of the franchises to improve their accessibility to the disabled" *Neff*, 58 F.3d at 1067. At issue here is whether or not Covenant Health ("Covenant") maintained sufficient control over Parkwest's implementation of reasonable accommodations for deaf and hard of hearing individuals. *See Id.* As movant for summary judgment the burden is on Covenant to show that they do not maintain the relevant control over Parkwest, however, Covenant has not met this burden by stating that they do not operate as a hospital or provide health care services and broadly describing Covenant and

20

Parkwest's parent-subsidiary relationship. *Celotex Corp.* 477 U.S. at 323; *See generally* ECF 31 Def. Br. at pgs. 22-24.

Contrary to Covenant's statements, there are indeed facts that raise a triable issue for which a jury could find that Covenant maintains sufficient control over Parkwest's implementation of requisite accommodations for deaf and hard of hearing individuals. *See Neff*, 58 F.3d at 1067. Specifically, Parkwest has a *Deaf and Hard of Hearing Rights & Responsibility System Policy* in place that is "to be used" by twelve of Covenant's other subsidiaries. See Rozynski Declaration Ex. K Defendants Policies p. 1. This policy goes beyond mere descriptors of accommodations that may be implemented and instead lays out the procedures in which accommodations may be implemented using mandatory language.[7] *C.f. Days Inns of Am.*, 22 F. Supp. 2d at 616 (finding a franchisor's manual recommendation for maintenance quality is not sufficient control to qualify the franchisor as an operator). The policy even designates specific interpreting agencies Parkwest and the other subsidiaries will contact for an interpreter. *See* Ex. K pg. 3. Additionally, the policy designates Stratus as the video interpreting service provider. *See* Ex. K pg. 2. In fact the Stratus video interpreting agreement lists Covenant Health as the customer and was executed by a Covenant Health Senior Leadership Team member. *See* Rozynski Declaration Ex. L Defendants Agreement for Stratus Video Interpreting Services pg. 3. Moreover, the Eleventh Circuit has found that a parent health company was not excused from liability because it housed the network in which

---

[7] "In the event Stratus VRI cannot provide for effective communications with an individual…and; an on-site qualified interpreter is determined to be necessary to ensure effective communications, the Administrative Supervisor/ Office Manager *will contact* Knoxville Center of the Deaf (KCD) or Visual Communication Interpreting (VCI) to request an on-site qualified interpreter from their resource pool." (emphasis added) Ex. K pg. 3; "However, family members or friends of the person will not be used unless (a) specifically requested by the individual who is deaf or hard of hearing, the family member or friend agrees to provide the assistance, and reliance on the family member or friend is appropriate under the circumstances…" Ex. K pg. 4.

21

the subsidiary's VRI machines were connected to, and the parent company applied its various policies and procedures to its subsidiaries. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 842 (11th Cir. 2017). Similarly, Parkwest staff has access to Covenant's internal intranet, giving rise that Covenant not only owns Parkwest but potentially "houses the network to which the VRI machines are connected." *Id.*; Ex. G Monday Dep. 41:8-17. Other statements from witnesses also suggest that Covenant Health maintains sufficient control over Parkwest.[8] *See* Pl.'s Statement of Disputed Facts ¶17. Thus, at this stage, Covenant Health has not affirmatively established that it does not maintain sufficient control over Parkwest's operation for purposes of compliance with the ADA and therefore summary judgment on this issue is inappropriate.[9] *See Celotex Corp.* 477 U.S. at 323.

## CONCLUSION

For the reasons stated herein, this Court should deny Defendants' Motion for Summary Judgment in its entirety.

---

[8] A Parkwest nurse stating there is no preference to using a live interpreter or VRI regarding Covenant's policy. *See* Ex. H Whidby Dep. 34:25-35:2. A Covenant Care Act was in place at Parkwest before the implementation of the Affordable Care Act. *See* Ex. G Monday Dep. 10:10-18. Covenant Health and Parkwest's independent General Counsels work together formulating and updating compliance policies. *See* Ex. G Monday Dep. 66:23-67:19.

[9] Covenant Health's *arguendo* in support of summary judgment is inapplicable. Covenant relies on TENN. CODE ANN. § 48-56-205. Covenant has not cited to any authority that this statute applies to liability under federal law. Additionally, this statute applies to "Creditors" of a non-profit organization, and no case law has been offered to support that this statute applies to plaintiffs in civil litigation under a federal discrimination claim. Moreover, the case law cited in support that this statute "is procedural only" seemingly misapplies the court's construction that section 12-9-04 of the Interlocal Cooperation Act as "simply a procedural statute" "provid[ing] no substantive rights or obligations" to TENN. CODE ANN. § 48-56-205. *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 203 (6th Cir. 1992).

22

Dated: February 28, 2020

Respectfully submitted,

EISENBERG & BAUM, LLP

By: _____

Andrew Rozynski, Esq.
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
ARozynski@eandblaw.com
*Attorneys for Plaintiff*