IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SCOTT ALLEN TOMEI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Docket No.: 3:19-CV-41 |
| ) | 12-PERSON JURY DEMANDED |
| PARKWEST MEDICAL CENTER and ) | |
| COVENANT HEALTH, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE DEFENDANTS' STATEMENT OF UNDISPUTED, MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff Scott Tomei, by and through his undersigned counsel, files this response to Defendants Statement of Undisputed, Material Facts in support of their Motion for Summary Judgment pursuant to FED. R. CIV. P. 56.

1. Covenant Health is a nonprofit corporation that is the sole member of the wholly owned subsidiary, nonprofit corporation known as Parkwest. Affidavit of M. Douglas Campbell, Jr., Esq., ¶ 3 (attached to Parkwest's Motion for Summary Judgment as **Exhibit 1**).

**Response:**
**Undisputed that Covenant Health is a nonprofit corporation that is the sole member of the wholly owned subsidiary, nonprofit corporation known as Parkwest.**

**Disputed to the extent that fact implies Defendant Covenant Health is not liable as an owner and/or operator of Parkwest Medical Center. (Rozynski Decl. Ex. H, Whidby Dep. 34:24-35:2; Rozynski Decl. Ex. G, Monday Dep. 10:10-18, 41:8-17, 45:8-20, 50:13-20, 66:23-67:19).**

2. Plaintiff is a deaf individual who primarily communicates through American Sign Language ("ASL"). Complaint, ¶¶ 1, 10.

**Response:**

**Undisputed**

3. Plaintiff fell at his house on October 21, 2017, that resulted in injuries to his right foot and leg. Complaint, ¶ 12.

**Response:**

**Undisputed**

4. He sought medical treatment from Parkwest at various times between October 24, 2017, and October 30, 2017. Complaint, ¶¶ 13, 18, 21, 31.

**Response:**

**Undisputed**

5. Medical personnel treating Plaintiff at Parkwest consisted of Dr. Christopher Pollock, who is not an employee of Parkwest or Covenant Health, and nursing staff, social workers, and other medical assistants, all of whom are solely Parkwest employees. See Excerpts from Plaintiff's Medical Chart (attached to Parkwest's Motion for Summary Judgment as **Exhibit 10**); Affidavit of M. Douglas Campbell, Jr., Esq., ¶¶ 10, 13 (attached to Parkwest's Motion for Summary Judgment as **Exhibit 1**)

**Response:**

**Undisputed**

6. During Plaintiff's hospitalization at Parkwest, he was provided with interpretive services through Video Remote Interpreting ("VRI") on multiple occasions. Complaint, ¶ 21.

**Response:**

**Undisputed that Plaintiff was provided with a VRI interpreter while at Defendants facility.**

**Objected and disputed to as misleading and misstates the allegations in the Complaint. In Paragraph 21, which Defendants cite to, Plaintiff alleged that "[o]nce admitted, Defendants' staff refused to provide Plaintiff with anything other than a Video Remote Interpreting (VRI) device." Further in Paragraph 22 of the Complaint, Plaintiff further alleges that "[h]owever, Defendants' VRI machine experienced technical difficulties and did not provide effective communication. More specifically, the VRI was nonfunctional because the hospital's network firewalls kept interrupting the video feed, disconnecting the device, the screen also kept freezing, and the picture was blurry." Nowhere in Plaintiff's allegations did he state he received VRI on multiple occasions. Moreover, Plaintiff alleged, throughout his Complaint, that the VRI was ineffective and that on numerous occasions Defendants failed to provide Plaintiff with any form of an interpreter. (Complaint ¶¶14, 20, 21, 22, 25, 26, 28, 30, 31, 32,**

7. Parkwest staff believed that the VRI functioned properly and provided effective interpreting services whenever used. Janelle Bagneski Deposition, p. 28:2-14 (attached to Parkwest's Motion for Summary Judgment as **Exhibit 2**); Michaela Whidby Deposition, p. 34:46 (attached to Parkwest's Motion for Summary Judgment as **Exhibit 3**); Sharon Monday Deposition, pp. 64-65:7-3 (attached to Parkwest's Motion for Summary Judgment as **Exhibit 4**).

**Response:**
**Objected and disputed as misleading and misstating the facts. The portions of depositions Defendants cite to all reflect the deponents general recollection of using the VRI machine and not their specific interactions with Plaintiff. In fact, Janelle Bagneski testified that she did not remember her encounter with Plaintiff nor did she have an independent memory of the Plaintiff at all. (Rozynski Declaration Ex. I, Bagneski Dep 15:16-17; 18:18-19:3)**

8. At all times during his hospitalization, Plaintiff was accompanied by either his daughter, his ex-wife, and/or his mother. Deposition of Tala Tomei (12/17/19), p. 30:15-19 (attached to Parkwest's Motion for Summary Judgment as **Exhibit 5**).

**Response:**

**Undisputed**

      9.      Plaintiff's daughter, Tala, has no hearing impairments and is fluent in ASL. <u>See</u> Plaintiff's Deposition, pp. 24:9-16, 69-72:16-3 (attached to Parkwest's Motion for Summary Judgment as as **<u>Exhibit 6</u>**); Tala Tomei Deposition (12/16/19), p. 9:7-18 (attached to Parkwest's Motion for Summary Judgment as as **<u>Exhibit 7</u>**); Tala Tomei Deposition (12/17/19), pp. 40-41:1214.

**Response:**
**Undisputed that Plaintiff's daughter has no hearing impairments and is fluent in ASL.**

**Objected and disputed to as this statement is misleading to the extent it implies Plaintiff's daughter Tala was a qualified interpreter under the circumstances as the record is replete with statements that she was not a qualified interpreter under the circumstances. (Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 9:7-18; 13:1-14:4; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:9-13; 21:22-22:8; 23:22-24:19; Ex. F, Leigha Tomei Dep. 42:5-43:3; Ex. C, Scott Tomei Dep. 55:17-22; 125:1-9).**

      10.      Plaintiff's mother, Frances, has no hearing impairments and has "home-signed" with Plaintiff for his entire life. <u>See</u> Plaintiff's Deposition, p. 20:21-23; Tala Tomei Deposition (12/17/19), pp. 45-46:14-24.

**Response:**
**Undisputed that Plaintiff's mother, Frances has no hearing impairments.**

**Objected and disputed to as misleading since the cited portions of Defendants facts state that Mr. Tomei communicates with his mother using his voice and grunts that she tries to understand. She further testified that Mr. Tomei reads his lips and might know her ABC's. Defendants cite this portion in an attempt to mislead this court that Plaintiffs mother knows enough sign language to effectively communicate with Plaintiff. Plaintiff's daughter also testified that Plaintiff's mother does not know much ASL at all. Furthermore, when specifically asked about home-sign Plaintiff answered that "They probably do. I don't know for sure" and later stated that Plaintiff's mother commented to Tala that she had issues understanding and**

explaining things to Plaintiff at the hospital. (Rozynski Declaration Ex. E, Tala Tomei Vol II 15:1-4; 45-46:14-24; 46:25-47:20)

11. Plaintiff's ex-wife, Leigha, hears 55% of speech, is fluent in ASL, can speak English, and effectively reads and writes in English. See Tala Tomei Deposition (12/17/19), pp. 7-8:22-8; Leigha Tomei Deposition, p. 9:3-17 (attached to Parkwest's Motion for Summary Judgment as **Exhibit 8**); Plaintiff's Deposition, p. 24:17-25; Notes taken by Leigha Tomei (attached to Parkwest's Motion for Summary Judgment as **Exhibit 9**).

**Response:**
**Undisputed that Plaintiff's ex-wife Leigha, is fluent in ASL.**

**Disputed that she hears 55% of speech, can speak English, and effectively reads and writes in English. Further disputed to the extent this fact implies she was a qualified interpreter under the circumstances. Plaintiff testified that she cannot speak 100% clearly and will often have to repeat herself, that she cannot understand English perfectly, and that 55% was an approximation. In fact, she testified that if she meets someone for the first time, forget it, she would not understand what that person is saying. Further she testified that she cannot read and write effectively as she often does not understand "big words" and when writing will often jumble her sentences and mix up verbs/nouns. (Rozynski Declaration Ex. F, Leigha Tomei Dep. 8:8-13; 8:22-24; 9:13-10:5; 15:5-16:2; 43:21-44:7; 46:14-22; Ex. E, Tala Tomei Dep. Vol I 11:20-22)**

12. Parkwest staff believed that Plaintiff's family served as effective interpreters for Plaintiff. See Excerpts from Plaintiff's Medical Chart attached to Parkwest's Motion for Summary Judgment as **Exhibit 10**.

**Response:**
**Disputed that Parkwest staff believed effective communication occurred. Defendant cites to vague portions of the medical record in most cases where Plaintiff's pain scale from 1-10 was taken down. This is not indicative of Defendants undisputed fact. Defendants also cite to no portion of their staff's deposition testimony which affirmatively states that effective communication existed. In fact, the record is clear that several individuals, specifically Plaintiff's Daughter Tala, and ex-wife Leigha, made numerous requests for interpreters. Based on these requests, Defendants knew or should have known that communication was ineffective as Plaintiff's companions**

constantly asked for an interpreter to better facilitate communication. (Rozynski Declaration Ex. D, Tala Tomei Dep Vol I 14:8-13; 14:14-15:6; 16:19-2417:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 21: 9-13; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei Dep. 24:25-26:3; 39:18-22; 39: 23-20:18; 40:19-25)

13. At all times material, Parkwest maintained a Deaf/Hard of Hearing policy. Sharon Monday Deposition, p. 10:10-18.

**Response:**

**Undisputed that Parkwest maintained a Deaf/Hard of Hearing Policy.**

**Disputed to the extent this implies their policies were followed as Plaintiff and companions testified that no interpreter ever showed up, VRI constantly froze and was choppy/blurry, and they relied on family members without consent, against their policy. Thus, he was not appropriately accommodated. (Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 14:8-13; 14:14-15:6; 16:19-24; 17:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei 24:25-26:3; 25:11-27; 28:24-30:1; 30:2-9; 32:20-32:4; 33:15-36:9; 39:18-22; 39: 23-40:18; 40:19-25; 42:5-43:3; 43:21-44:7; 46:14-22; Ex. C, Scott Tomei Dep. 55:17-22; 64:15-19; 106: 5-12; 106:13-25; 114:19-22; 125:1-9)**

14. This policy provides a form to indicate communication preferences of deaf or hard of hearing individuals upon admission to and registration with Parkwest. Id. at pp. 16-17:24-1; 18:10-13.

**Response:**

**Undisputed**

15. When requested, qualified, in-person interpreters are retained at Parkwest's expense. Affidavit of Sharon Monday, ¶ 3 (attached to Defendants' Motion for Summary Judgment as **Exhibit 12**).

**Response:**

**Disputed as seen in Defendants document production, Plaintiff filled out the communication assessment form requesting both VRI which was offered 24 hours a day, and an on-site qualified interpreter. Yet, Plaintiff was only provided VRI on a handful of occasions in which he contends it never worked, and was never provided with an onsite qualified interpreter as requested. (Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 14:8-13; 14:14-15:6; 16:19-24; 17:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei 24:25-26:3; 25:11-27; 28:24-30:1; 30:2-9; 32:20-32:4; 33:15-36:9; 39:18-22; 39:23-40:18; 40:19-25; 42:5-43:3; 43:21-44:7; 46:14-22; Ex. C, Scott Tomei Dep. 55:17-22; 64:15-19; 106: 5-12; 106:13-25; 114:19-22; 125:1-9, Ex. B Plaintiff's Communication Assessment Form)**

17. Any request by a deaf patient for an interpreter is approved absent exceptional circumstances, i.e., emergency situations where medical treatment cannot be delayed while waiting for an interpreter to arrive at the hospital. Sharon Monday Deposition at p. 31:19-22; Affidavit of Sharon Monday, ¶ 3.

**Response:**

**Disputed to the extent that this fact implies an interpreter was provided in this instance. As described above, qualified onsite interpreter was never provided, despite Mr. Tomei completing the requisite forms and requesting an interpreter repeatedly. (Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 14:8-13; 14:14-15:6; 16:19-24; 17:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei 24:25-26:3; 25:11-27; 28:24-30:1; 30:2-9; 32:20-32:4; 33:15-36:9; 39:18-22; 39:23-40:18; 40:19-25; 42:5-43:3; 43:21-44:7; 46:14-22; Ex. C, Scott Tomei Dep. 55:17-22; 64:15-19; 106: 5-12; 106:13-25; 114:19-22; 125:1-9, Ex. B Plaintiff's Communication Assessment Form)**

18. Alternatively, if VRI is requested, VRI is available at all times and can be provided within minutes of a request. Sharon Monday Deposition, p. 31:2-7.

**Response:**
**Disputed to the extent that this fact implies an interpreter was provided in this instance. Mr. Tomei filled out the Communication assessment form, checked off he wanted the VRI available 24 hours a day, yet it was only provided on a few occasions. (Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 14:8-13; 14:14-15:6; 16:19-24;**

17:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei 24:25-26:3; 25:11-27; 28:24-30:1; 30:2-9; 32:20-32:4; 33:15-36:9; 39:18-22; 39:23-40:18; 40:19-25; 42:5-43:3; 43:21-44:7; 46:14-22; Ex. C, Scott Tomei Dep. 55:17-22; 64:15-19; 106: 5-12; 106:13-25; 114:19-22; 125:1-9, Ex. B Plaintiff's Communication Assessment Form)

19. Parkwest's VRI is portable and utilizes Parkwest's high-speed Internet connection, which allows for effective, real-time communication with ASL and other interpreters. Affidavit of Sharon Monday, ¶ 5

**Response:**
**Undisputed to the extent that Parkwest's VRI is portable and utilizes Parkwest's high-speed Internet connection, which allows for effective, real-time communication with ASL and other interpreters.**

**Disputed to the extent that this implies the VRI worked in real time and provided effective communication as the Plaintiff and his companions all testified that the VRI failed them every time. (Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 14:8-13; 14:14-15:6; 16:19-24; 17:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei 24:25-26:3; 25:11-27; 28:24-30:1; 30:2-9; 32:20-32:4; 33:15-36:9; 39:18-22; 39:23-40:18; 40:19-25; 42:5-43:3; 43:21-44:7; 46:14-22; Ex. C, Scott Tomei Dep. 55:17-22; 64:15-19; 106: 5-12; 106:13-25; 114:19-22; 125:1-9, Ex. B Plaintiff's Communication Assessment Form)**

20. All staff are trained on Parkwest's Deaf/Hard of Hearing policy. See **Exhibit 13** attached to Parkwest's Motion for Summary Judgment; and Sharon Monday Deposition at p. 11:722; and Affidavit of Sharon Monday, ¶ 6

**Response:**
**Undisputed that staff are trained on the policies**

**Disputed that this training equates to implementation of the policies as Plaintiff and his companions continuously testified that the VRI was ineffective, requests for interpreters were ignored, and no in-person interpreter was provided despite requests and the form for communication assessment was filled out. Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 14:8-13; 14:14-15:6; 16:19-24; 17:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei 24:25-26:3; 25:11-27; 28:24-30:1; 30:2-9; 32:20-32:4; 33:15-36:9; 39:18-22; 39:23-40:18; 40:19-25; 42:5-43:3; 43:21-44:7; 46:14-**

22; Ex. C, Scott Tomei Dep. 55:17-22; 64:15-19; 106: 5-12; 106:13-25; 114:19-22; 125:1-9, Ex. B Plaintiff's Communication Assessment Form)

21. This training includes instructions on when to seek in-person interpreters and/or VRI, how to seek in-person interpreters and/or VRI, and how to effectively operate VRI equipment. Affidavit of Sharon Monday, ¶ 6.

**Response:**

**Undisputed that staff are trained on how to obtain in-person interpreters and the VRI as well as setting up the VRI.**

**Disputed to the extent that this request implies in-person interpreters were called by Defendants staff as there are no invoices, call logs, or any other evidence to show that an in-person interpreter was requested. Further disputed to as misleading as in this instance the VRI never worked properly and the staff's solution to the non-working VRI was just to unplug it. Rozynski Declaration Ex. D, Tala Tomei Dep. Vol I 14:8-13; 14:14-15:6; 16:19-24; 17:2-9; 18:6-20:6; Ex. E, Tala Tomei Dep. Vol II 16:10-25; 21:22-22:8; 23:22-24:19; 32:18-23; 33:2-34:8; 34: 24-35:4; Ex. F, Leigha Tomei 24:25-26:3; 25:11-27; 28:24-30:1; 30:2-9; 32:20-32:4; 33:15-36:9; 39:18-22; 39:23-40:18; 40:19-25; 42:5-43:3; 43:21-44:7; 46:14-22; Ex. C, Scott Tomei Dep. 55:17-22; 64:15-19; 106: 5-12; 106:13-25; 114:19-22; 125:1-9, Ex. B Plaintiff's Communication Assessment Form)**

Respectfully submitted,

EISENBERG & BAUM, LLP

By:_____
Andrew Rozynski, Esq.
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
ARozynski@eandblaw.com
*Attorneys for Plaintiff*
