UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| SCOTT ALLEN TOMEI, | ) |
| Plaintiff, | ) 3:19-CV-00041-DCLC-HBG |
| vs. | ) |
| PARKWEST MEDICAL CENTER and COVENANT HEALTH, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to address Defendants' Motion to Dismiss [Doc. 29]. Plaintiff filed a response [Doc. 34]. This matter is now ripe for resolution. For the reasons that follow, Defendants' Motion to Dismiss [Doc. 29] is **DENIED**.

**I. BACKGROUND**

Plaintiff, Scott Tomei, is a "profoundly deaf individual who communicates primarily in American Sign Language" ("ASL") and "cannot effectively communicate by reading lips" [Doc. 1, p. 4]. On October 24, 2017, Plaintiff sought treatment at Parkwest Medical Center ("Parkwest") for injuries to his right leg and foot [*Id*.]. Plaintiff asserts that he requested a live ASL interpreter upon arrival at Parkwest, but the hospital staff refused, showed him an x-ray of his knee, and sent him home with antibiotics and ibuprofen [*Id*.]. Two days later, Plaintiff sought treatment for the same injuries at Lenoir City Emergency Room and was transferred by ambulance to a vascular surgeon at Parkwest [*Id*. at p. 4–5]. Plaintiff asserts he was provided a Video Remote Interpreting ("VRI") device once he was admitted, but the device was "nonfunctional" [*Id*. at p. 5].

On October 27, 2017, Plaintiff underwent surgery by Dr. Pollock at Parkwest [*Id*.]. Apart from the VRI device, no interpretive services were provided to Plaintiff before, during, or after his

1

surgery [*Id*. at p. 6]. The day after surgery, Plaintiff "continued to feel intense burning and pins-and-needles pains" and was unable to communicate his condition and pain with hospital staff [*Id*.]. The next day, Plaintiff's pain heightened to the point he was "screaming in excruciating pain" but hospital staff continued to refuse to provide an ASL interpreter [*Id*.].

On October 30, 2017, Dr. Pollock asked Plaintiff if he would like to go home [*Id*.]. No interpreter was provided during this conversation between Plaintiff and Dr. Pollock and, although Plaintiff attempted to convey his condition and degree of pain through gestures, he was discharged while "heavily sedated and with a blue foot" [*Id*.]. On October 31, 2017, a physical therapist and nurse from Covenant Health visited Plaintiff and informed Dr. Pollock that they could not continue physical therapy due to the state of Plaintiff's foot [*Id*. at p. 7]. Dr. Pollock instructed Plaintiff to call his family doctor and make a follow-up appointment for November 1, 2017 [*Id*.].

On November 1, 2017, Plaintiff saw Dr. Howard Holmes who sent him to University of Tennessee Medical Center ("UTMC") where Plaintiff was provided with 24/7 live ASL interpretive services [*Id*.]. On November 2, 2017, Plaintiff underwent surgery at UTMC and ASL interpretive services were provided to Plaintiff before, during, and after the surgery [*Id*.]. On November 5, Plaintiff was informed by UTMC staff that he would have to undergo a partial amputation of his leg and that the amputation would not have been necessary if he sought treatment at their facilities earlier [*Id*.]. On November 7, 2017, 30% of Plaintiff's right leg was amputated from the knee down [*Id*.].

Based on these facts, Plaintiff filed a Complaint in this Court on January 25, 2019 [Doc. 1], asserting that Parkwest and Covenant Health discriminated against him on the basis of his disability in violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116(a) [*Id*. at p. 12]. Defendants Parkwest Medical Center and Covenant Health filed the

Motion to Dismiss [Doc. 29] that is currently before the Court asserting that Plaintiff's complaint is time-barred by the applicable statute of limitations [*Id.* at p. 9].

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Ashcroft*, 556 U.S. at 679, and may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A motion to dismiss based on Rule 12(b)(6) "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, if the factual allegations in the complaint "affirmatively show that the claim is time-barred," dismissal under Rule 12(b)(6) is appropriate. *Id.*

## III.   ANALYSIS

Defendants' Motion to Dismiss requires the Court to determine the appropriate statute of limitations for claims brought under Section 1557 of the Patient Protection and Affordable Care Act (the "ACA"). 42 U.S.C. § 18116. In 2010, Congress enacted Section 1557 of the ACA, which prohibits discrimination in certain health programs or activities on the basis of race, color, national origin, sex, age, and disability. *Id.* (citing to Title VI of the Civil Rights Act of 1964, Title IX of

3

the Education Amendments of 1972, the Age Discrimination Act of 1975, and Section 504 of the Rehabilitation Act of 1973). Instead of crafting new substantive standards for discrimination in these areas, "Congress incorporated the legal standards that define discrimination" from the four enumerated anti-discrimination statutes into Section 1557. *Doe v. BlueCross BlueShield of Tennessee, Inc.*, 926 F.3d 235, 239 (6th Cir. 2019). Notably, neither Section 1557 of the ACA nor Section 504 of the Rehabilitation Act contain an express statute of limitations.

For claims under Section 504 of the Rehabilitation Act, the Sixth Circuit borrows the state personal injury statute of limitations, which in Tennessee is one year. *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012); Tenn. Code Ann. § 28-3-104(a)(1)(A). This practice of borrowing state statutes of limitations "generated a host of issues," which led Congress to enact the "uniform federal statute of limitations" found in 28 U.S.C. § 1658 in 1990. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380 (2004). The "central purpose" of the federal statute of limitations is "to minimize the occasions" where courts are borrowing state statutes to limit claims under federal law. *Id*. To limit the need for borrowing from state statutes, Section 1658 provides that civil actions arising under an Act of Congress enacted after December 1, 1990 must be brought within four years after the cause of action accrues. 28 U.S.C. § 1658. The Supreme Court, in addressing whether a cause of action arises under a post-1990 Act of Congress, held that "a cause of action 'aris[es] under an Act of Congress . . .' if the plaintiff's claim against the defendant was *made possible* by" the enactment. *Jones*, 541 U.S. at 382 (quoting 28 U.S.C. § 1658) (emphasis added).

Nonetheless, confusion ensued regarding the appropriate statute of limitations for Section 1557 claims because while Section 1557 was enacted after December 1, 1990, it references statutes enacted prior to December 1, 1990. Defendants contend that Plaintiff's Section 1557 claim is

4

time-barred by the one-year statute of limitations because claims under the relevant underlying statute—Section 504 of the Rehabilitation Act—are subject to the one-year statute of limitations for personal injury actions. Plaintiff takes the position that because Section 1557 was enacted in 2010, after the December 1, 1990 cut-off date, the federal four-year statute of limitations of Section 1658 applies regardless of the limitations period applicable to the underlying anti-discrimination statutes [Doc. 34].

Defendants assert that "the clear majority approach and trend" is to apply the state statute of limitations to a Section 1557 claim because such a claim is made possible by the underlying anti-discrimination statutes. [Doc. 29, p. 8]. Defendants urge this Court to follow the approach taken in *Smith v. Highland Hosp. of Rochester*, No. 17-CV-6781-CJS, 2018 WL 4748187 (W.D.N.Y. Oct. 2, 2018), *Vega-Ruiz v. Northwell Health*, No. 19CV0537DRHAYS, 2020 WL 207949 (E.D.N.Y. Jan. 14, 2020), and *Ward v. Our Lady of the Lake Hosp., Inc.*, No. CV 18-00454-BAJ-RLB, 2020 WL 414457 (M.D. La. Jan. 24, 2020).

*Smith* involved a cause of action under Section 1557 of the ACA alleging discrimination on the basis of gender. *Smith*, 2018 WL 4748187 at \*3. The relevant anti-discrimination statute at issue in *Smith* was Title IX of the Education Amendments of 1972. *Id*. Focusing on Title IX, which borrows the state statute of limitations, the district court applied the state three-year statute of limitations for personal injury actions. *Id*. In a footnote, the court stated that, although the plaintiff did not raise the issue, the federal statute of limitations in Section 1658 did not apply because Title IX was enacted in 1972. *Id*. at \*3 n.3. The court did not provide any further discussion or analysis on the issue.

In *Vega-Ruiz*, the plaintiff alleged that the defendants failed to provide her with an ASL interpreter in violation of Section 1557 of the ACA. *Vega-Ruiz*, 2020 WL 207949 at \*1. In

5

determining the appropriate statute of limitations, the court held that "though the complaint formally alleges a violation of the ACA, Plaintiff's claim is made possible by the Rehabilitation Act." *Id*. at *3. The court noted that Section 1557 adopts the "enforcement mechanisms provided for and available" under the Rehabilitation Act. *Id*. It held that "[t]he ACA does not create a new cause of action" and described the plaintiff's claim as "in effect, a Rehabilitation Act claim." *Id*. at *3-4. Rather than creating a new cause of action, the district court found the ACA only ensures that existing anti-discrimination statutes apply to "health program[s] or activit[ies]" that receive Federal funding. *Id*. at *3. Therefore, the court concluded the appropriate statute of limitations was that of the Rehabilitation Act—the state's three-year statute of limitations for personal injury actions. *Id*. at *4. Likewise, the court in *Ward* relied on *Vega-Ruiz* and concluded that the state one-year statute of limitations for personal injury actions applied to the plaintiff's Section 1557 claim alleging disability discrimination. *Ward*, 2020 WL 414457 at *2.

Conversely, Plaintiff asserts that a Section 1557 claim is made possible by, and therefore arises under, the ACA, which was enacted in 2010. Plaintiff urges the Court to follow the approach taken in *Palacios v. MedStar Health*, Inc., 298 F. Supp. 3d 87 (D.D.C. 2018). *Palacios* involved a cause of action under Section 1557 alleging discrimination based on gender identity. *Id*. at 88. Addressing the issue of the appropriate statute of limitations, the court found that the "relatively clear answer" was "the four-year catchall statute of limitations" found in 28 U.S.C. § 1658. *Id*. at 91. The court held that the four-year statute of limitations applied to the plaintiff's Section 1557 claim because it arose under 42 U.S.C. § 18116(a), which was enacted in 2010 and which did not contain an express statute of limitations. *Id*.

The Sixth Circuit follows a two-part test to determine the applicable statute of limitations "[w]hen a federal statute provides a cause of action but does not specify a limitations period."

6

*McCormick*, 693 F.3d at 662. "First, if the federal cause of action arises under an Act of Congress enacted after December 1, 1990, it is governed by 28 U.S.C. § 1658…." *Id.* "If that is not the case, the courts borrow the state's most analogous limitations period." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 682 (6th Cir. 2013). Section 1557 of the ACA was enacted in 2010. 42 U.S.C. § 18116. Thus, so long as Section 1557 created a cause of action, the statute of limitations would be governed by Section 1658, the four-year limitations period.

As an initial matter, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). It can create such rights explicitly or implicitly. *Id.* "An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal court." *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir.), *cert. denied sub nom. Ohlendorf v. Local 876, United Food & Commercial Workers Int'l Union*, 139 S. Ct. 198 (2018) (quoting *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting C*annon v. Univ. of Chi.*, 441 U.S. 677, 692 n.13 (1979)).

As with any statutory construction issue, the Court starts with the text of Section 1557. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (explaining that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms") (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (in turn quoting older cases)). Section 1557 is entitled "Nondiscrimination" and provides:

(a) In general

7

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

(b) Continued application of laws

Nothing in this title (or an amendment made by this title) shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), or the Age Discrimination Act of 1975 (42 U.S.C. 611 et seq.), or to supersede State laws that provide additional protections against discrimination on any basis described in subsection (a).

(c) Regulations

The Secretary may promulgate regulations to implement this section.

42 U.S.C. § 18116.

The language utilized here "includes the rights-creating language found" in four federal civil rights statutes,[1] which are incorporated into Section 1557. *Se. Pennsylvania Transp. Auth. v.*

---

[1] *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."); 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ..."); 42 U.S.C. § 6102 ("[N]o person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."); 29 U.S.C. § 794 ("No otherwise qualified individual with a disability in the United

*Gilead Scis., Inc.*, 102 F. Supp. 3d at 698. This district court, after quoting all four anti-discrimination statutes, which indisputably created private rights of action, concluded that both "[t]he cross-reference to these statutes and the use of similar rights-creating terms [in Section 1557] manifest Congressional intent to create a private right." *Id.* Other district courts have also concluded that Section 1557 creates a private right of action. *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *5 (E.D. La. Oct. 24, 2017)("It seems abundantly clear to the Court that Congress intended to create a private right of action to enforce § 1557…."); *Rumble v. Fairview Health Servs.*, No. 14-CV-2037, 2015 WL 1197415, at *7 (D. Minn. Mar. 16, 2015)("Because Section 1557 states that the enforcement mechanisms available under those four statutes apply to violations of Section 1557, Section 1557 necessarily also permits private causes of action").

The Sixth Circuit in *Doe* also contradicts the holding in *Vega-Ruiz* that the ACA does not create a new cause of action. The Sixth Circuit expressly held that a plaintiff has a "private right of action to enforce the prohibitions of the Rehabilitation Act through the ACA." *Doe*, 926 F.3d at 239. Furthermore, the court in *Vega-Ruiz* held that the plaintiff's Section 1557 claim was "made possible" by the Rehabilitation Act because the plaintiff "recite[d] the standard for stating a Section 504 Rehabilitation Act claim" and the plaintiff's Section 1557 claim "could have been brought directly under the Rehabilitation Act." *Vega-Ruiz*, 2020 WL 207949 at *4. This argument is not persuasive because claims under different statutes should be distinguished from one another regardless of whether they are "analyzed under the same frameworks." *Tartt v. City of Clarksville*, 149 F. App'x 456, 463 (6th Cir. 2005) (holding that the district court "should have distinguished

---

States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....").

9

Plaintiff's § 1981 and [Tennessee Human Rights Act] claims from his Title VII claim" even though they are "analyzed under the same frameworks"). Although claims under Section 1557 of the ACA alleging disability discrimination and claims under Section 504 of the Rehabilitation Act are "analyzed under the same frameworks," they must be distinguished as two private causes of action. *Id*. This is also certainly consistent with the provision in Section 1557 providing that it does not displace the other anti-discrimination statutes. 42 U.S.C § 18116(b). Lastly, the final rule implementing Section 1557 of the ACA expressly states, "a private right of action is available under Section 1557." 81 Fed. Reg. 31375 (May 18, 2016). Therefore, the Court finds that Section 1557 of the ACA creates a private cause of action separate from that of the Rehabilitation Act.

Finding a private right of action is also consistent with the enforcement mechanisms provision of Section 1557. Section 1557 provides that "[t]he enforcement mechanisms provided for and available under [the enumerated anti-discrimination statutes] shall apply for purposes of violations of this subsection." The final rule implementing Section 1557 of the ACA lists the following as "enforcement mechanisms": "requiring covered entities to keep records and submit compliance reports to [the Office for Civil Rights];" "conducting compliance reviews and complaint investigations;" "providing technical assistance and guidance;" "suspension of, termination of, or refusal to grant or continue Federal financial assistance;" "referral to the Department of Justice with a recommendation to bring proceedings to enforce any rights of the United States;" and "any other means authorized by law." 81 Fed. Reg. 31375 (May 18, 2016); *see also* 45 C.F.R. 92.301 (2017) ("[T]he enforcement mechanisms available for and provided under . . . Title IX of the Education Amendments of 1972 . . . shall apply for the purposes of Section 1557 as implemented by this part.").

The Sixth Circuit defines "enforcement mechanisms" as "the distinct methods available

under the four listed statutes for compelling compliance with the substantive requirements of each statute." *Doe*, 926 F.3d at 239. For example, the "enforcement mechanisms" provision gave the plaintiff in *Doe* a private right of action to enforce the prohibitions of the Rehabilitation Act through the ACA. *Id*. If a plaintiff, such as the one in *Doe*, alleged discrimination on the basis of age, the "enforcement mechanisms" provision would require exhaustion of administrative remedies. 42 U.S.C. § 6104. Simply put, "enforcement mechanisms" are the paths aggrieved individuals must take on the journey to seek compliance with the requirements of the anti-discrimination statute (e.g., administrative remedies or a private cause of action). They do not prescribe the time within which the journey must begin.

Both parties claim that the Supreme Court's analysis in *Jones v. R.R. Donnelley* supports their positions. The Supreme Court's analysis in *Jones* dealt with the issue of whether the four-year federal statute of limitations applied to a claim under a post-1990 *amendment* to a pre-1990 statute. *Jones*, 541 U.S. at 382-83. Section 1557 does not *amend* Section 504 of the Rehabilitation Act; rather, Section 1557 is "a new, stand-alone statute" that is distinct from Section 504 of the Rehabilitation Act. *Id*. at 381. To the extent Section 1557 references Section 504 of the Rehabilitation Act, the holding in *Jones* still supports the conclusion that the four-year statute of limitations applies to claims under Section 1557. The Supreme Court expressly rejected the lower court's interpretation that the the four-year statute of limitations was restricted "to cases in which the plaintiff's cause of action is based solely on a post-1990 statute that 'establishes a new cause of action without reference to preexisting law.'" *Id*. (quoting *Jones v. R.R. Donnelley & Sons Co.*, 305 F.3d 717, 726 (7th Cir. 2002), *rev'd and remanded*, 541 U.S. 369 (2004)). This is precisely the interpretation that Defendants' supporting authority has attempted to revive by holding that a claim under Section 1557 arises under the underlying anti-discrimination statute. *Vega-Ruiz*, 2020

11

WL 207949 at *3 (holding that even "though the complaint formally alleges a violation of the ACA, Plaintiff's claim is made possible by the Rehabilitation Act."). Although Section 1557 references preexisting anti-discrimination statutes, a new cause of action under Section 1557 itself was *made possible* by the 2010 enactment of the ACA.

Thus, the Court finds that Plaintiff's Section 1557 claim is subject to the four-year federal statute of limitations. Section 1557 of the ACA is a federal statute that "provides a cause of action but does not specify a limitations period." *McCormick*, 693 F.3d at 662. A Section 1557 cause of action "arises under" the ACA because, for the reasons previously stated, private rights of action for discrimination in health programs and activities were made possible by the ACA. Furthermore, the enforcement mechanisms adopted by Section 1557 do not prescribe the applicable statute of limitations. Finally, the ACA was enacted in 2010; thus, it is a post-1990 enactment. Therefore, the four-year statute of limitations applies to Plaintiff's Section 1557 claim.

Under the four-year statute of limitations, Plaintiff's complaint is timely. Plaintiff initially sought treatment at Parkwest on October 24, 2017 and visited Parkwest for the last time on October 30, 2017. Thus, the alleged discrimination occurred, at the latest, on October 30, 2017. Plaintiff filed his Complaint with this Court on January 25, 2019, 15 months after the alleged discrimination occurred. Therefore, Plaintiff's complaint is timely and dismissal under Rule 12(b)(6) is inappropriate.

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, Defendants' Motion to Dismiss [Doc. 29] is **DENIED**.

SO ORDERED:

12
Case 3:19-cv-00041-DCLC-HBG   Document 41   Filed 06/10/20   Page 12 of 13   PageID #: 877

s/ Clifton L. Corker
United States District Judge